UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MIGUEL BERRIOS HURTADO, (A-Number: 246-276-897),

Petitioner,

v.

WARDEN, California City Correctional Center,

Respondent.

Case No.  2:26-cv-1210-DC-JDP

FINDINGS AND RECOMMENDATIONS

Petitioner Miguel Berrios Hurtado entered the United States in 2022, was released by ICE, and then was re-detained in 2026.  Petitioner, proceeding pro se, seeks a writ of habeas corpus under 28 U.S.C. § 2241.  For the following reasons, I recommend that the petition be granted and that petitioner be immediately released.

**Background**

In November 2022, petitioner entered the United States and was detained by the Department of Homeland Security.  ECF No. 5 at 1.  Respondent acknowledges that it "released [petitioner] subject to pending removal proceedings," although it does not provide any details regarding the timing or conditions of release.  *Id.*  On January 19, 2026, immigration authorities encountered petitioner in a jail and took him into immigration custody.  *Id.*  A rap sheet provided by respondent indicates that petitioner was arrested January 18, 2026, for possession of cocaine.

1

ECF No. 5-3 at 4.  That charge remains pending.  ECF No. 5-1 at 3.  Petitioner has no other criminal history except for a prior misdemeanor charge that was dismissed in 2025.  ECF 5-3 at 3.

### Procedural History

On March 30, 2026, petitioner filed a pro se petition for writ of habeas corpus.  ECF No. 1.  Respondent filed an answer on April 23, 2026.  ECF No. 5.  Although I permitted petitioner to file a traverse, no traverse has been filed, and the petition and answer are deemed submitted.  ECF No. 4.

### Legal Standard

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law.  28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### Analysis

Petitioner claims that his re-detention without a bond hearing violates the law.  ECF No. 1.  Respondent argues that petitioner's detention is mandatory under 8 U.S.C. § 1225(b)(2), and that, consequently, the government did not "violate Petitioner's constitutional rights by arresting and detaining Petitioner for removal proceedings after he was arrested by local law enforcement for a drug related offense."  ECF No. 5 at 2.  Respondent acknowledges, however, that its statutory position "has been rejected by most of the Courts in the Eastern District of California."  *Id*. at 1.  Notably, respondent does not explain what, if any, binding precedent supports its statutory position.  More fundamentally, respondent's argument is misplaced because it only

addresses petitioner's due process rights through the lens of its statutory position.[1]  ECF No. 5 at 1.

Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  I consider each in turn.

To determine whether a specific conditional release rises to the level of a protected liberty interest, courts have compared "specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey* [*v. Brewer*, 408 U.S. 471 (1971)]."  *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).  In *Morrissey*, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life."  408 U.S. at 482.  The court observed that while "the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, the petitioner's "condition is very different from that of confinement in a prison."  *Id.*  "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions."  *Id.*  The revocation of parole undoubtedly "inflicts a grievous loss on the parolee."  *Id.* (quotations omitted).  Therefore, in *Morrissey*, the Supreme Court found that a parolee in a criminal case possessed a protected interest in "continued liberty."  *Id.* at 481-84.

Recently, confronted with issues similar to those raised by petitioner, courts in this Circuit have found that noncitizens released from ICE custody acquire a liberty interest in their continued

---

[1] Respondent also concedes that it previously treated petitioner as a noncitizen subject to 8 U.S.C. § 1226(a), which does not mandate detention, when it released him at some point after his November 2022 entry.  ECF No. 5 at 1.  Having already released petitioner under section 1226, "[r]espondent's argument that his detention is now governed by § 1225(b)(2)(A) is untenable."  *Moises V.A. v. Wofford*, No. 1:25-cv-01419-SKO (HC), 2026 WL 252237, at *2 (E.D. Cal. Jan. 30, 2026).

3

release.  *See, e.g.*, *Labrador-Prato v. Noem*, No. 1:25-cv-1598-DC-SCR, 2025 WL 3458802, at *5 (E.D. Cal. Dec. 2, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, No. 1:25-cv-00379-SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 481-82 (1972)).  I agree with the bulk of other courts to have considered the issues presented here and find that petitioner has a protected liberty interest in his continued release.

I ordered respondent to provide "any documents necessary for resolving the issues presented in the petition." ECF No. 4 at 2.  Respondent did not file documents related to petitioner's release from immigration detention but concedes in its answer that petitioner was "released subject to pending removal proceedings." ECF No. 5 at 1.  Petitioner entered the United States in November 2022 and was detained and released.  Accordingly, the record indicates that petitioner lived in the United States, subject to ICE supervision but out of custody, for over three years prior to his re-detention in January 2026.  Petitioner thereby formed "enduring attachments of normal life." *See Morrissey*, 408 U.S. at 482.

I conclude that petitioner's initial release and time out of custody have created a constitutionally protected liberty interest in continued release.  *See Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released noncitizens to have strong liberty interests).

Once a court has found that a noncitizen has a liberty interest in continued release, the court must next determine what procedural protections the government must afford the noncitizen before depriving him of that liberty interest.  This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:

4

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, petitioner has a significant private interest in his continued release. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner has a private interest in his continued release that developed over the three years between his release and re-detention. *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Turning to the second *Mathews* factor, the risk of erroneous deprivation without a bond hearing is high. Prior to releasing petitioner, respondent necessarily determined that he presented neither a danger to the community nor a risk of flight. *See Pinchi*, 792 F. Supp. 3d at 1034 (explaining that a petitioner's "release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community"). Absent a pre-deprivation bond hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's re-detention will not be pursuant to a valid state interest. *See Omer G.G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

"Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-00801, 2025 WL

1918679, at *7 (E.D. Cal. July 11, 2025)).  Respondent offers no evidence or argument indicating that any procedural safeguards have been employed following petitioner's re-detention; more generally, it gives the court no reason to believe that any efforts have been made to prevent erroneous deprivation of petitioner's liberty.  *See id*.  On the contrary, the fact that the government maintains that petitioner is subject to mandatory detention indicates that it has not made sufficient efforts to prevent an erroneous deprivation of his liberty.  Accordingly, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high."  *See A.E. v. Andrews*, No. 1:25-cv-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

"Third, the Government's interest in detaining Petitioner without . . . a hearing is 'low.'" *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted).  "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).  Respondent has not provided any information about the additional burden it would bear as a result of being required to provide a bond hearing.  *See* ECF No. 5.

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's re-detention without a bond hearing violates his due process rights.  Given this finding, I must determine the appropriate remedy.  Petitioner seeks immediate release or, alternatively, a bond hearing.  ECF No. 1 at 8.  Respondent argues that a bond hearing would be the proper remedy. ECF No. 5 at 3.

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention.").  To satisfy due process, "the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).  For example, in *Guillermo M.R.*, the

petitioner was arrested and charged with vandalism.  791 F. Supp. 3d at 1028.  ICE learned of the incident the following day, and officials then interviewed the petitioner soon afterwards.  *Id*.  ICE then waited an additional five weeks to re-detain the petitioner without a pre-deprivation hearing.  *Id*.  The court held that petitioner was entitled to a pre-deprivation hearing because the respondent's "course of conduct demonstrate[d] their lack of urgency."  *Id*. at 1036.

Where a petitioner is entitled to a pre-deprivation hearing, courts have found that "[t]he appropriate relief . . . is their immediate release from custody, and to be provided with relief returning them to status quo ante, i.e., the last uncontested status which preceded the pending controversy."  *Cardin Alvarez v. Rivas*, No. 25-cv-2943-PHX-GMS, 2025 WL 2898389, at *21 (D. Ariz. Oct. 7, 2025), *report and recommendation adopted in part, rejected in part on other grounds*, 2025 WL 2899092 (D. Ariz. Oct. 10, 2025).

Respondent argues that even if the lack of bond hearing violated the constitution, the proper remedy is a "post-deprivation bond hearing, not immediate release" as petitioner's arrest by local law enforcement is a "changed circumstance" warranting petitioner's detention.  ECF No. 5 at 3.  While a pre-deprivation hearing is typically required, "there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate."  *Guillermo M.R.*, 791 F. Supp. 3d at 1036; *see also Zinermon*, 494 U.S. at 128 (to forego a pre-deprivation hearing, respondent must show "the necessity of quick action").  However, respondent has failed to explain why this was an urgent situation in which a pre-deprivation hearing was not possible.

ICE records demonstrate that immigration officers had knowledge of petitioner's January 18, 2025 arrest the day after it happened.  *See* ECF No. 5-1 at 3 (petitioner's I-213 form is dated January 19, 2026, and references petitioner's January 18 arrest).  It appears that petitioner was released from local custody to the ICE detainer on January 19.  Petitioner alleges that he was released from local custody to attend a drug treatment program.  ECF No. 1 at 6.  Respondent does not contest this allegation and confirms that the local charge is pending.  ECF No. 5-1 at 3.

There is no evidence, nor has respondent presented any argument, suggesting that there was "the necessity of quick action" by ICE such that petitioner could not have been provided a pre-deprivation hearing after he was released by local authorities.  *See Zinermon*, 494 U.S. at 128.

7

Indeed, respondent does not argue that petitioner is a danger to the community or a flight risk. Moreover, there is no indication that a pre-deprivation hearing was unnecessary because petitioner was already in local law enforcement custody when he was re-detained; on the contrary, courts have found that a pre-deprivation hearing is still required where the petitioner is initially arrested by local law enforcement and then transferred to ICE custody. *See Adamchuk v. Casey*, No. 3:26-cv-1149-RBM-VET, 2026 WL 785532, at \*1-2 (S.D. Cal. Mar. 20, 2026).

**Conclusion**

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Respondent be ordered to immediately release petitioner (A-Number: 246-276-897) from its custody. Respondent shall not impose any additional restrictions on petitioner, unless that is determined to be necessary at a future pre-deprivation hearing. If the government seeks to re-detain petitioner, it must provide no less than seven days' notice to petitioner and must hold a constitutionally compliant pre-deprivation bond hearing before a neutral arbiter at which the government bears the burden of proving flight risk or danger by clear and convincing evidence. This order does not address the circumstances in which respondent may detain petitioner in the event petitioner becomes subject to an executable final order of removal.

3. The Clerk of Court be directed to serve California City Detention Facility with a copy of this order.

4. The Clerk of Court be further directed to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See*

*Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  <u>  May 7, 2026  </u>                                   _____

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE